**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **TIMOTHY SENKOWSKI,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **Civil Action No. 4:18-cv-639-P** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Came on for consideration the motion of Defendant, United States of America, for summary judgment. The court, having considered the motion, the response of Plaintiff, Timothy Senkowski, the reply, the record, and applicable authorities, finds that the motion should be **GRANTED**.

## BACKGROUND

### A.    Plaintiff's Claims

The operative pleading is Plaintiff's amended complaint filed July 22, 2019. Doc.[1] 17. Plaintiff asserts a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80 (the "Act" or "FTCA"), based on sexual assaults and harassment of him by a guard at Federal Medical Center Fort Worth ("FMC").

---

[1]The "Doc. __" reference is to the number of the item on the docket in this civil action.

Plaintiff alleges: In the early part of 2015, Plaintiff was working in Food Service as part of the AM Jail Crew. Doc. 17, ¶ 9. Food Service Officer Dallas Calhoun ("Calhoun") was the assigned supervisor. *Id.* Plaintiff had his upper body inside a dishwasher, showing another inmate how to assemble it, when Calhoun grabbed Plaintiff's waist and thrust his genitals and erect penis up against Plaintiff's anus. *Id.* Others present joked about the incident, saying that if there was a dent in the top of the machine, it was from Plaintiff trying to escape Calhoun. *Id.* ¶ 11.[2] Food Service Officer Christopher Compton ("Compton") was told about the incident, but failed to report it. Compton told further jokes about the incident. *Id.* ¶ 12. Other times, Calhoun would come up behind Plaintiff and rub his clothed genitals and erect penis against Plaintiff's body and back. Other times, Calhoun would try to use his thermometer as a shank to physically injure Plaintiff. These attempts would penetrate Plaintiff's uniform and skin and draw blood. *Id.* ¶ 13. One time while attempting to avoid Calhoun, Plaintiff was severely scratched and was escorted to the Health Services Department. *Id.* ¶ 14. On April 13, 2016, Plaintiff's lower back and pelvis hurt so bad from Calhoun's advances that he had to attend sick call. He was given a shot and motrin and told to rest for a day. *Id.* ¶ 16. On April 9, 2016, Plaintiff requested a job change to the PM Jail Crew to avoid Calhoun. On June 2, 2016, he requested another job change to the back dock. *Id.* ¶ 17. On October 18, 2016, Plaintiff reported the sexual harassment to the psychology staff. *Id.* ¶ 19. Monica Anderson ("Anderson"), the officer

---

[2]The court notes that there is not a paragraph 10 in the amended complaint. Doc. 17.

2

assigned to conduct an investigation, called Plaintiff a liar and covered up the sexual harassment and assault by Calhoun. *Id.* ¶¶ 19–20.

### B.    The Motion for Summary Judgment

In its motion for summary judgment, the government says that many of Plaintiff's claims are time barred under the FTCA, as Plaintiff failed to file his administrative tort claim within two years of accrual. Additionally, Plaintiff's claims are barred by sovereign immunity. Doc. 33. Plaintiff has never really responded to the motion; rather, he has sent three letters to the Court. Docs. 38, 43, and 46. The Court granted Plaintiff an extension of time to respond to the motion for summary judgment, Doc. 42, but he failed to do so.

## LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged

3

elements of its case. *Id.* at 324; *see also* FED. R. CIV. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 597 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247–48. Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ANALYSIS

### A.    Undisputed Facts

#### 1.    The Tort Claim

The record reflects that on December 12, 2017, Plaintiff submitted his claim under the FTCA. Doc. 35, App. 100. The description of the claim given by Plaintiff basically tracks the language used in the amended complaint. *Id.* App. 101–02. The first incident occurred in the early part of 2015. *Id.* App. 101. Plaintiff does not provide any other dates until he says that on April 9, 2016, he requested to be changed to the PM Jail Crew. *Id.* He requested another job change on June 2, 2016. *Id.* Shortly after that request, he wrote two

anonymous letters, one to Food Service Administrator Monroe ("Monroe") and the second to a friend, who sent his letter to Monroe. *Id.* On October 18, 2016, Plaintiff supplied Dr. Morris with a comprehensive report of the harassment, including the fact that Plaintiff had sent the two letters. The harassment was reported and on March 27, 2017, Anderson informed Plaintiff that unless he had a specific date and time of the incident, nothing could be done. *Id.* App. 102. Anderson told Plaintiff that there was no mention of the letters in the report. On August 24, 2017, Plaintiff verified with the chief psychologist that the letters were mentioned in the report. *Id.* Under the heading "State the Nature and Extent of Each Injury," Plaintiff says he was forced to quit his grade one job and lose time in grade. He says he has suffered mental health issues including depression and possibly PTSD. *Id.* By letter dated January 14, 2019, Plaintiff's claim was denied on the basis that the investigation failed to reveal any evidence to substantiate Plaintiff's allegations. *Id.* App. 105.

2.    <u>Plaintiff's Testimony</u>

On March 6, 2020, the government took Plaintiff's deposition. Doc. 35, App. 004. Plaintiff explained further the facts giving rise to his complaint in this action. He described the AM Jail Crew as a friendly bunch, who "did some weird stuff . . . practical jokes." *Id.* App. 006. Plaintiff was the ring leader and class clown. *Id.* App. 007. Calhoun came on in early 2015 to watch over the AM Jail Crew. *Id.* App. 022. Around that time, Plaintiff's upper body was inside the dishwasher and his "butt's sticking out in the air." *Id.* App. 024. He felt hands on his waist and could feel somebody up against him. He heard laughing. *Id.*

5

Calhoun let go and everybody was laughing, including Plaintiff. *Id.* App. 025. Plaintiff asked Calhoun why he did something like that and Calhoun responded, "because you're always joking." *Id.* App. 026. Compton found out and he made jokes. *Id.* App. 031. To the others, it was like a locker room joke and Plaintiff laughed and smiled to cover up the pain. Later on, Plaintiff just shook his head when Compton said other things. *Id.* App. 032. On several other occasions, while Plaintiff was sitting with three others at a table, Calhoun would sneak up on Plaintiff and rub himself across Plaintiff's back. *Id.* App. 027. As for the allegation that Calhoun would poke Plaintiff with a meat thermometer, Plaintiff may have started it himself by grabbing a plastic knife. *Id.* App. 054–55. Calhoun pulled out his thermometer and poked at Plaintiff, saying, "Aha, I gotcha." *Id.* App. 056. It made Plaintiff mad because it poked holes in his clothes. *Id.* App. 056–57. This happened several times. *Id.* App. 057. Calhoun would not poke hard and Plaintiff did not need medical attention. *Id.* App. 059.

Plaintiff says he was physically injured two times while trying to escape Calhoun. On April 12, 2016, Plaintiff says he hurt his lower back and pelvis doing the splits after he slipped and fell running from Calhoun. He lied and said he was hit by a food cart. *Id.* App. 014–16, 034–35. Plaintiff went to sick call the day after he was injured. *Id.* App. 068–71. Plaintiff received a shot and was given Motrin and told to rest for a day or two. *Id.* App. 015–16, 072–73, 091–93. On August 10, 2016, Plaintiff says he came through an opening in the chow hall and walked into Calhoun and tried to get away from him. As he tried to get away, he ran into the door handle of the refrigerator and it sliced his arm, which bled

6

really badly. *Id.* App. 016–18, 060–63. The wound was not deep, just like sliding across grass. *Id.* App. 062. Medical staff cleaned the wound, put on antibiotic ointment, put gauze over the wound, and taped it up. *Id.* App. 060, 075.

In April 2016, Plaintiff moved to the PM Jail Crew. *Id.* App. 041. That crew had gotten suspended for stealing food. *Id.* App. 044. Plaintiff got a promotion for moving. *Id.* App. 042. He tried but could not stop the stealing, so he wanted out and moved to a job on the back dock. *Id.* App. 045. After Plaintiff moved to the PM Jail Crew, Calhoun stopped doing anything to Plaintiff. *Id.* App. 046, 078. And, even though he was in charge, Calhoun never came out to the back dock. *Id.* App. 047. Plaintiff got fired from the back dock job after about six weeks. Monroe thought he broke the garbage disposal.[3] *Id.* App. 047–48. Compton got Plaintiff moved back to the AM Jail Crew. Calhoun was still in charge, but Plaintiff never saw him. *Id.* App. 048. Plaintiff quit because he was tired and seeing Calhoun and Compton irritated him. *Id.* App. 052. A couple of days later, he filed a complaint under the Prison Rape Elimination Act, 34 U.S.C. §§ 30301–30309 ("PREA").[4] *Id.* App 053. Until then, except for the letters to Monroe, he did not tell anyone about what happened with Calhoun because he loved his job. *Id.* App. 028–29, 037–38. Plaintiff hated Anderson, who investigated the PREA complaint. He thought perhaps Anderson did not

---

[3]Plaintiff believes he got fired for having written the two letters to Monroe, saying that he got the back dock job because "he's Calhoun's bitch." Doc. 35, App. 040, 050–51.

[4]The Court dismissed the claim Plaintiff purported to bring pursuant to PREA in this action, since PREA does not create or provide a private cause of action. Doc. 6.

like him because she thought he was prejudiced. Anderson said of the incidents with Calhoun that "it was more like it was a joke." *Id.* App. 084.

### B.    Limitations

Under the FTCA, a claimant must file an administrative tort claim with the appropriate federal agency within two years of accrual of the claim. 28 U.S.C. § 2401(b); *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001). A claim accrues at the time of the plaintiff's injury. *United States v. Kubrick*, 444 U.S. 111, 120–23 (1979). In this case, Plaintiff filed his tort claim on December 12, 2017. Claims that arose more than two years before that date are barred by limitations.[5]

### C.    Sovereign Immunity

The Act provides, in pertinent part:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

28 U.S.C. § 1346(b)(2). Similarly, the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), provides that an inmate may not bring a civil action for mental or emotional injury absent a showing of physical injury. *Hutchens v. McDaniels*, 512 F.3d 193, 196 (5th Cir. 2007). Here, plaintiff has acknowledged that a sexual act did not occur. Doc. 35, App. 081. As for

---

[5]Although some courts have determined that state law may postpone the commencement of the running of limitations in the case of a continuing tort, plaintiff has not raised the issue and the Court need not consider it. *See Young v. United States*, 727 F.3d 444, 447 (5th Cir. 2013) (noting that the question remains open in this circuit).

physical injuries, plaintiff has only described two incidents within the limitations period, on April 12, 2016, and August 10, 2016, for which he sought medical treatment.[6]

In the Fifth Circuit, the plaintiff must show more than a *de minimis* physical injury. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). The government maintains that neither of the injuries described by Plaintiff is more than *de minimis*. The Court agrees. With regard to the April 12 injury, Plaintiff went to sick call the day after the incident. He received a shot and some Motrin and was told to rest for a day or two. On August 10, Plaintiff cut his arm and received a bandage.[7] The latter is clearly the type of wound that would have been handled at home without requiring medical attention. The former is not any more serious than in other cases where a *de minimis* finding was made. *See Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997); *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997); *Hejny v. Dallas Cty. Jail*, No. 3:06-CV-0235-K, 2007 WL 426228, at *1–2 (N.D. Tex. Feb. 5, 2007) (citing cases).

As stated, the Court only has jurisdiction over claims that have been exhausted. *Gregory v. Mitchell*, 634 F.2d 199, 203–04 (5th Cir. 1981). Here, the government maintains that Plaintiff did not exhaust his remedies as to claims related to negligent hiring, training, retention, or supervision. Doc. 35, App. 100–02. Plaintiff failed to dispute this. Nor does Plaintiff dispute that any negligent failure to protect claim would implicate the

---

[6]The pokes with the meat thermometer sometimes required a bandaid. Doc. 35, App. 056.

[7]Whether the August 10, 2016 incident should be counted is another question the Court need not address. The Court notes that Plaintiff testified that Calhoun's behavior stopped when Plaintiff transferred to the PM Jail Crew. Doc. 35, App. 046.

discretionary function exception to the FTCA. 28 U.S.C. § 2680(a). That is, although the Bureau of Prisons has a duty to safeguard its prisoners pursuant to 18 U.S.C. § 4042, the manner in which the duty is exercised is discretionary. *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010). Thus, a failure to protect claim cannot be brought under the Act.

To the extent Plaintiff purports to bring a claim for violation of his Eighth Amendment rights, the Act does not provide a waiver of sovereign immunity for constitutional torts. *FDIC v. Meyer*, 510 U.S. 471, 478 (1994); *Sampson v. United States*, 73 F. App'x 48, 49 (5th Cir. 2003).

And, finally, the Act only provides a waiver of sovereign immunity for tortious acts committed by an employee acting within the scope of his office or employment. 28 U.S.C. § 1346(b)(1). Whether the employee's conduct occurred within the scope of his employment is governed by state law. *Id.*; *Garcia v. United States*, 62 F.3d 126, 127 (5th Cir. 1995). Under Texas law, an employee acts within the scope of his employment if his actions are (1) within the general authority given him, (2) in furtherance of the employer's business, and (3) for the accomplishment of the object for which he is employed. *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995); *Tex. & P. Ry. Co. v. Hagenloh*, 247 S.W.2d 236, 241 (Tex. 1952). When an employee deviates from the performance of his duties for his own purposes, his employer is not responsible for his actions. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). Here, Plaintiff has made no argument that Calhoun's actions were for the purposes of his employer and not for his own

10

purpose. *See Bodin v. Vagshenian*, 462 F.3d 481, 485 (5th Cir. 2006) (burden is on plaintiff to show that the employee acted for the employer and not for personal reasons).

### CONCLUSON

The Court **ORDERS** that the government's motion for summary judgment be, and is hereby, granted; that Plaintiff take nothing on his claims herein; and that such claims be, and are hereby, **DISMISSED WITH PREJUDICE**.

**SO ORDERED** on **November 5, 2020.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE